## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JUSTIN PECK,<br>Defendant. | MEMORANDUM DECISION<br>AND ORDER<br>GRANTING THIRD-PARTY PETITION<br><br>Case No. 2:20-CR-185-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge<br><br>FOR PUBLICATION |

Proceeds of Defendant Justin Peck's crime were used to pay off a deed of trust secured by real property and the United States seeks criminal forfeiture of that property. Third-party claimant Jesse Dunn filed a petition asserting ownership of the property. The court grants the petition and vacates the preliminary order granting the Government's motion for forfeiture.

### I.

Mr. Peck pleaded guilty to operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960. *See* Dkt. No. 34. As part of the written plea agreement, Mr. Peck agreed to forfeit Salt Lake County Parcel No. 27-02-177-005, which is located at 8891 S. 1030 W., West Jordan, UT 84088. *See* Dkt. No. 15 at 5. But at the change of plea hearing, Mr. Peck represented to the magistrate judge "that he does not have any interest in that property." Dkt. No. 43 at 5. The Government failed to disclose this representation when it filed a motion with the undersigned district judge seeking forfeiture of the real property. *See* Dkt. No. 16. The court granted the Government's motion and entered a preliminary order of forfeiture. *See* Dkt. No. 17. That order became final as against Mr. Peck when the court imposed sentence. *See* Dkt. No. 33.

Meanwhile, Mr. Dunn filed a petition asserting ownership of the real property as a third-party claimant pursuant to Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853(n). *See* Dkt. No. 22. The court held an evidentiary hearing on the petition. *See* Dkt. Nos. 42, 46, 49. The evidence presented at the hearing established the following, largely undisputed facts.

Mr. Dunn was a friend and employee of Mr. Peck. *See* Dkt. No. 52 at 44:2–19. While working with Mr. Peck, Mr. Dunn became familiar with how Mr. Peck's unlawful enterprise, Source Investments, operated. *See id.* at 49:14–50:20, 97:5–7. Generally, contractors would write checks payable to the Source Investments bank account at Mountain America Credit Union, and Mr. Peck or Mr. Dunn would meet them and accept the checks in exchange for an equivalent amount of cash, minus a commission. *See id.* at 43:3–8; 49:14–50:5. Mr. Dunn was an authorized user of the Source Investments account and deposited checks into, and withdrew cash from, this account. *See id.* at 55:19–23, 97:16–24. He also kept records of the transactions by filling out spreadsheets tracking the names of the contractors he met, the number and dollar amounts of checks he received, and the amounts he paid out in cash. *See id.* at 98:25–99:10.

Mr. Dunn purchased the disputed real property on March 14, 2018, for $475,000. *See* Dkt. No. 57 at 9. This money came from a variety of sources, including a hard money loan of $280,500. *See id.*; Dkt. No. 52 at 89:9–23; Gov't Ex. 6. The hard money loan was secured by a deed of trust covering the disputed property. *See* Gov't Ex. 5. Although it initially questioned the source of the funds (other than the hard money loan) used for the purchase, the Government now concedes that these funds were not proceeds of Mr. Peck's offense. *See* Dkt No. 57 at 9. The Government also concedes that the disputed real property was not an instrumentality of, or used to facilitate, Mr. Peck's offense. *See* Dkt. No. 52 at 53:1–15.

Proceeds of Mr. Peck's offense were used to pay off the hard money loan, however. Specifically, Mr. Peck authorized Mr. Dunn to wire $304,795.66 from the Source Investments account to the title company for payment to the hard money lender. *See id.* at 26:5–7; 94:20–23.

## II.

The United States obtained the preliminary forfeiture order pursuant to 18 U.S.C. § 982(a)(1). *See* Dkt. Nos. 16, 17. That statute requires that "[t]he court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." "Once an asset is determined to be 'forfeitable' pursuant to § 982(a)(1), . . . the seizure and disposition, including any administrative or judicial proceeding, is governed by the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 853(c) and (e) through (p)." *United States v. Bornfield*, 145 F.3d 1123, 1136 (10th Cir. 1998). In addition, "Rule 32.2 of the Federal Rules of Criminal Procedure governs the criminal forfeiture procedure." *United States v. Arnold*, 878 F.3d 940, 943 (10th Cir. 2017).

Section 853 and Rule 32.2 provide a two-step process for criminal forfeitures. At the first step, "the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). In cases involving Section 982(a)(1), this requires a determination whether the property was involved in the offense or traceable to property that was so involved. If this nexus is established, the court must enter a preliminary order of forfeiture "without regard to any third party's interest in the property." Fed. R. Crim. P. 32.2(b)(2)(A). "Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)." *Id.*

At the second step, following the entry of the preliminary order, any third party "asserting a legal interest in property which has been ordered forfeited to the United States . . . may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). The preliminary order "becomes final as to the defendant" "at sentencing—or at any time before sentencing if the defendant consents." Fed. R. Crim. P. 32.2(b)(4)(A). But the order "remains preliminary as to third parties until the ancillary proceeding is concluded." *Id.*

After the ancillary proceeding, the court must amend the forfeiture to account for the third-party petitioner's interest if the petitioner establishes by a preponderance of the evidence that he or she

> (A)      . . . has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B)      . . . is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture[.]

21 U.S.C. § 853(n)(6).

### III.

Based on the evidence and argument presented during the ancillary proceedings, as well as its analysis of governing law, the court concludes that Mr. Dunn had a legal right, title, or interest in the disputed property that renders the order of forfeiture invalid because at the time Mr. Peck committed his crime, title to the property was vested in Mr. Dunn rather than Mr. Peck or at least Mr. Dunn's interest in the property was superior to that of Mr. Peck.

Given that the Government now concedes that proceeds of Mr. Peck's offense of conviction were not used in the initial transaction, it is clear that Mr. Peck did not acquire any interest in the disputed property when Mr. Dunn purchased it. And although such proceeds were later used to pay off the deed of trust, the court concludes that this transaction did not give Mr. Peck (or, through him, the Government) any legal interest in the disputed property.

State law defines ownership interests. *See United States v. Andrews*, 530 F.3d 1232, 1238 (10th Cir. 2008). Under Utah law, a deed of trust is a deed executed in conformity with Utah Code §§ 57-1-20–36 that conveys real property to a trustee to secure performance of an obligation of the grantor to a beneficiary. *See General Glass Corp. v. Mast Constr. Co.*, 766 P.2d 429, 432 (Utah Ct. App. 1988); Utah Code § 57-1-19. Mr. Dunn obviously must have first received title to the disputed property at the time of purchase for him to have been able to then convey that title to the trustee. *See* Utah Code § 57-1-19; *First Sec. Bank of Utah, N.A. v. Banberry Crossing*, 780 P.2d 1253, 1256 (Utah 1989) ("[A] trust deed is a conveyance by which title to the trust property passes to the trustee."). And the language of the deed of trust itself confirms that Mr. Dunn held unencumbered title to the property when he executed the conveyance. *See* Gov't Ex. 5 at 1.

Utah follows the "general rule . . . that payment of the secured debt extinguishes the lien of the mortgage or deed of trust by itself and instantaneously." *Stenquist v. Jmg Holdings LLC*, 379 P.3d 941, 944 (Utah Ct. App. 2016) (quoting 55 Am. Jur. 2d *Mortgages* § 318 (2016)). Thus, under Utah law, once the debt secured by a deed of trust is paid, "a trust deed is a mere nullity." *Id*. at 947; *cf. Hector, Inc. v. United Sav. & Loan Ass'n,* 741 P.2d 542, 545 (Utah 1987) ("[W]hen the debt is paid . . . the lender no longer has a legitimate interest in the security."). It follows here that once the hard money loan was paid off, the deed of trust was extinguished, leaving Mr. Dunn

with the unencumbered title he initially acquired on the date of purchase. The Government has not identified, and the court has not located, any authority that would support a conclusion that Mr. Peck (and through him, the Government) obtained any sort of legal interest in the real property simply because proceeds of Mr. Peck's crime were used to pay the hard money lender. Indeed, a contrary conclusion would be difficult to square with ordinary principles of property law. Certainly a subsequent lender does not somehow obtain a legal interest in collateral securing a previous loan from a different lender simply because the borrower obtains an unsecured loan from the second lender and then uses the proceeds of that loan to pay off the first loan. Title to the disputed property was thus vested in Mr. Dunn rather than Mr. Peck both before the deed of trust was executed and after the hard loan was paid off.

To be sure, Mr. Dunn did not hold title during the time between these two events. He did, however, retain the rights to possess the property, to lease the property to third parties on commercially reasonable terms, to collect rents so long as the hard money loan was not in default, and to construct improvements during this period. *See* Gov't Ex. 5 at 1–4. And because Utah law provided that the deed of trust would be extinguished upon payment of the hard money loan, Mr. Dunn also retained a clear, albeit conditional, legal interest in the title to the property. By contrast, Mr. Peck never had any legal interest in the disputed property. Between the time that Mr. Dunn executed the deed of trust and the time the deed was repaid, Mr. Dunn's interest in the property was thus clearly superior to Mr. Peck's nonexistent interest.

It follows that at all potentially relevant times, title to the disputed property was vested in Mr. Dunn rather than Mr. Peck or at least Mr. Dunn's interest in that property was superior to Mr. Peck's. The order that this property be forfeited is therefore invalid, and the preliminary forfeiture order must be amended to account for Mr. Dunn's interest. And because the disputed

real property is the only property subject to the preliminary forfeiture order, the only amendment that can account for Mr. Dunn's interest is vacatur of that order.

## IV.

The structure of Congress's criminal forfeiture scheme reinforces the court's conclusion. Section 982(a)(1) provides that "[t]he court, in imposing sentence *on a person convicted of an offense* in violation of section 1956, 1957, or 1960 of this title, shall order *that the person* forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." (Emphasis added). The statute thus contemplates that forfeiture will be ordered *against the person convicted*. "After all, criminal forfeiture is a sanction against the individual rather than a judgment against the property itself." *United States v. Channon*, 973 F.3d 1105, 1118 (10th Cir. 2020). "Criminal forfeiture is an *in personam* action in which the forfeiture of and the vesting of title in the United States in the defendant's tainted property is imposed as a punishment *against the defendant*." *United States v. Jarvis*, 499 F.3d 1196, 1203 (10th Cir. 2007) (emphasis added). Here, Mr. Peck was convicted, and Mr. Dunn was not. And Mr. Dunn owned, or at least had a significant legal interest in, the real property at issue, and Mr. Peck did not.

To be sure, the statutory scheme also includes Section 853(c), which provides that

> [a]ll right, title, and interest in property described in [Section 982(a)(1)] vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States unless the transferee establishes . . . that he is a bona ride purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture . . . .

But in discussing this provision, the Supreme Court has suggested that "forfeiture applies only to specific assets"—and thus that "in the likely event that the third party has spent the money," the Government cannot obtain forfeiture from the third party but must instead "resort to a State's

equitable remedies—which may or may not even be available—to force him to disgorge an equivalent amount." *Kaley v. United States*, 571 U.S. 320, 335 n.11 (2014); *see also Honeycutt v. United States*, 137 S. Ct. 1626, 1633 (2017) (citing *Kaley*, 571 U.S. at 335 n.11).

As the Supreme Court's language in *Kaley* makes clear, the specific property here is the money paid from the Source Investments bank account to the title company and then to the hard money lender. But these tainted funds were not paid to Mr. Dunn. Mr. Dunn does not have the specific property; indeed, he never did. And the United States does not seek to recover the specific funds from the lender—which presumably could establish that it "is a bona fide purchaser for value . . . without cause to believe that the property was subject to forfeiture" in all events.

At a minimum, given the *in personam* nature of criminal forfeiture and the statutory requirement that forfeiture be against a person convicted of an offense, the court concludes that criminal forfeiture cannot reach property in which the defendant never had an interest. The court believes this conclusion remains true even if, contrary to the Supreme Court's suggestion, Section 853(c) is not strictly limited to specific property.

Mr. Dunn had unencumbered title to the real property at the time of his purchase and he has such title now. Although he executed a deed of trust, that document became a legal nullity as soon as the hard money loan was paid off. Mr. Peck had no interest in the real property at the time of purchase and, as discussed, he did not acquire any interest in the property simply because proceeds of his crime were used to pay the hard money lender. Under these circumstances, it simply cannot be said that "the proceeds of [Mr. Peck's] money laundering transaction *enabled the defendant*"—and here that is Mr. Peck, not Mr. Dunn—"*to acquire the property*" for which the Government seeks forfeiture. *Bornfield,* 145 F.3d at 1135 (emphasis added).

Finally, under certain conditions where property otherwise subject to forfeiture is unavailable, the Government may obtain forfeiture of "any other property *of the defendant*, up to the value of any property" that is subject to forfeiture but unavailable. 21 U.S.C. § 853(p)(2) (emphasis added). This substitute property provision applies, *inter alia*, where property otherwise subject to forfeiture "has been transferred or sold to, or deposited with, a third party." *Id*. § 853(p)(1)(B). But while Section 853 thus allows the Government to obtain forfeiture of substitute property from the person convicted of the offense if it cannot reach otherwise forfeitable property that has been transferred to an unconvicted third party, the statute contains no comparable provision allowing the Government to seek forfeiture of substitute property from the third party itself.

In this case, only the funds transferred to the hard money lender were subject to forfeiture. And presumably the Government believes those funds themselves are now beyond its reach. Under these circumstances, Section 853(p) leaves little doubt that although the Government may seek substitute property from Mr. Peck, it may not seek property not otherwise subject to forfeiture from Mr. Dunn.[1]

---

[1] In *Honeycutt*, the Supreme Court held that Section 853(a) precludes forfeiture against one co-defendant of property obtained through illegal conduct by another codefendant. "To limit forfeiture to property that the defendant actually acquired under that statute, the Supreme Court relied on § 853(a)'s phrase 'the person obtained.'" *Channon*, 973 F.3d 1105, 1115 (10th Cir. 2020). To be sure, Section 982(a)(1) does not contain the word "obtained." It may follow that under this statute the Government can obtain forfeiture from one person convicted of a crime of property obtained by a codefendant who was also convicted of the same crime. *See, e.g.*, *United States v. Kenner*, 443 F. Supp. 3d 354, 368–70 (E.D.N.Y. 2020) (collecting cases and concluding that *Honeycutt* does not preclude joint and several liability under 18 U.S.C. § 982(a)(1)). But it does not follow that the Government can obtain from a third-party not convicted of any crime forfeiture of property in which the convicted person subject to forfeiture does not have—and never had—any legal interest.

**V.**

The substitute property provision thus makes clear that this court's ruling does not leave the Government without a remedy in a case like this one. In addition to its statutory remedies against the person convicted of a crime, moreover, state law remedies may be available against the unconvicted third party. As noted, the Supreme Court suggested in *Kaley* that because "forfeiture applies only to specific assets, . . . in the likely event that the third party has spent the money, the Government must resort to a State's equitable remedies—which may or may not even be available—to force him to disgorge an equivalent amount." 571 U.S. at 335 n.11 (2014). And in *United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660 (4th Cir. 1996), the Fourth Circuit permitted the Government to assert a state-law claim for conversion against a law firm that had spent funds subject to forfeiture that it had received from one of its clients. But the Fourth Circuit did not disturb the district court's conclusion that forfeiture of substitute property was not allowed against the law firm.[2]

It is possible that Utah law would afford the Government some sort of equitable remedy against Mr. Dunn or his real property based on the facts of this case. The court need not decide that issue, however. For even if such a remedy is available, the Government has not sought it. Indeed, despite the court's invitation, the Government declined to address whether an equitable lien would be warranted here, and it expressly disclaimed as unnecessary any reliance on an equitable subrogation theory. *See* Dkt. No. 52 at 130:19–131:20; Dkt. No. 59 at 4 n.6.

---

[2] The Fourth Circuit did allow discovery to determine whether the law firm had actually spent the tainted funds or had instead merely transferred them to entities owned by the firm's partners. But in the latter case, the transferred funds would still constitute the specific property subject to forfeiture.

## VI.

In the preliminary forfeiture order, the court determined that the disputed real property was "subject to forfeiture, the defendant had an interest in the property, and that the government has established the requisite nexus between the subject property and the offense." Dkt. No. 17 at 1–2. And, as the Government has repeatedly emphasized throughout these ancillary proceedings, under Tenth Circuit precedent, "a third party has no right to challenge the preliminary order's finding of forfeitability." *Andrews*, 530 F.3d at 1236. The court must therefore consider whether its previous determinations set forth in the preliminary forfeiture order bar its conclusions here.

Although the preliminary forfeiture order did conclude (erroneously) that Mr. Peck had an interest in the disputed real property, it is clear that a determination of the existence and extent of a defendant's interest in the property is separate from a finding of forfeitability. Federal Rule of Criminal Procedure 32.2(b)(1)(A) requires that the court "determine what property is subject to forfeiture under the applicable statute." Here, the applicable statute is Section 982(a)(1), which requires forfeiture of "property, real or personal, involved in [the] offense, or any property traceable to such property." But as the 2000 Advisory Committee notes to Federal Rule of Criminal Procedure 32.2 and Section 982(a)(1) make clear, the determination that property is subject to forfeiture under the applicable statute does not require the court to assess the existence and extent of the defendant's interest. The parties have a right "to have the jury determine whether the government has established the requisite statutory nexus between the offense and the property to be forfeited. The jury, however, would not have any role in determining whether a defendant had an interest in the property to be forfeited. This is a matter for the ancillary proceeding." Fed. R. Crim. P. 32.2 advisory committee's notes (2000). The court's finding in the

preliminary forfeiture order that Mr. Peck had an interest in the disputed real property is thus subject to dispute and revision in the ancillary proceeding.

To be sure, the Government concedes that the disputed real property was not involved in Mr. Peck's offense, and the court's conclusion that Mr. Peck never had any interest in this property may call into question whether this property is traceable to other property so involved. But if the court's previous determinations that the disputed real property was "subject to forfeiture" and that "the government has established the requisite nexus between the subject property and the offense" somehow pose an impediment to the court's conclusions today, the court concludes that those prior determinations should be withdrawn.

Tenth Circuit precedent does not prevent the court from *sua sponte* revisiting determinations of forfeitability. And several district courts have held that this is permissible. *See, e.g., United States v. Bailey*, 926 F. Supp. 2d 739, 763–64 (W.D.N.C. 2013); *United States v. Nicoll*, 2015 WL 13628130, at *4–5 (D.N.J. Apr. 29, 2015). If necessary, this course of action is clearly warranted here. As recounted earlier, in seeking the preliminary forfeiture order, the Government failed to disclose to the district judge from whom it sought this order that Mr. Peck had expressly disclaimed any ownership interest in the disputed real property at his change of plea hearing before the magistrate judge. Although the court has no reason to think the Government's omission of clearly material information was willful as opposed to merely negligent, it nevertheless prevented the court from making a fully informed determination of forfeitability. The court concludes that under these circumstances, the Government cannot be heard to argue that the previous, deficient determination somehow bars the court from providing the relief to which it has now determined Mr. Dunn is entitled under 21 U.S.C. § 853(n).

\*      \*      \*

Because Mr. Dunn has not been convicted of any crime and the Government has failed to establish that Mr. Peck (and through him the Government) ever obtained any legal interest in Mr. Dunn's property, the United States cannot obtain criminal forfeiture of that property. This court will not allow the Government to stretch criminal forfeiture beyond the bounds prescribed by Congress. As aptly stated by the Third Circuit, "[t]he Government must turn square corners when it exercises its power to confiscate private property." *United States v. Lucas*, 986 F.3d 224, 229 (3d Cir. 2021).

Mr. Dunn's third-party petition is **GRANTED**. The preliminary forfeiture order is **VACATED.**

**IT IS SO ORDERED**.

DATED this 5th day of December, 2022

_____
Howard C. Nielson, Jr.
United States District Judge